SHERLOCK, plaintiff in error, vs. THAYER, defendant in error.

Where rent is made payable weekly, or at other stated intervals, in advance, the tenant has the whole of the first day of each succeeding week, or other interval of time, in which to make the payment.

Error to the Wayne Circuit Court.

Plaintiff below sued for damages for the forcible detainer of certain premises. It was proved that Sherlock was the owner of the premises, and leased them for six months next ensuing the 10th day of April, 1854, for a certain weekly rent, "*payable weekly in advance;*" that April 10th, 1854, fell on Monday; that the rent was paid for and up to the week ending Monday, July 3d; that on Tuesday, July 4th, the rent for the week to the ensuing Monday being unpaid, Sherlock took possession of the premises, no one being therein at the time, and retained them, etc. The evidence was, that the taking was peaceable, etc.

The Court charged the jury that Thayer (the lessee) had the entire of the 4th of July to pay the rent, and that the

weekly rent was not due until the lapse of the entire of that day. To this charge an exception was taken ; and a verdict was rendered for plaintiff below.

*D. C. Holbrook*, and *Wilcox & Gray*, for plaintiff in error.

It is not illegal to contract that rent shall be paid before the property is enjoyed. (2 *Comst.*, 286.) The question then is, whether the parties intended that the weekly rent should be paid previous to the enjoyment of the property. If " in advance". does not express such intention, there are no words which will express it, and we arrive at the strange result of a lawful contract which cannot be made because there are no words to express it. If the tenant had a right to enjoy without payment for one day, why not for three or four days? No reasonable meaning can attach to- " in advance," if it does not import as we contend. Where rent is payable quarterly, but not in advance, it is said to be due on the first day of the next quarter ; but this does not mean any time on that day, but on the very first moment of that day. (1 *Ashmead,* 198.) So here the rent could not be claimed until the entire expiration of the 3d, but was due the first instant of the 4th.

*D., & S. A. & D. Goodwin*, for defendant in error.

1. By the lease the term commenced on Tuesday, the 11th day of April, 1854, and the rent being payable, *during the term*, weekly in advance, became payable on that day, and on the first day of each succeeding week ; that is to say, on each succeeding Tuesday. (3 *U. S. Dig., Title time, Sec. 4, and cases cited; 2 Pars. on Cont.*, 175, *note; Ashland* vs. *Lothy*, 9 *Adol. & El.*, 879; *Bigelow* vs. *Willson*, 1 *Pick.*, 485; *Blake* vs. *Crowningshield*, 9 *N. H.*, 304, *citing* 15

*Mass.*, 248; *Lester* vs. *Garland,* 2 *Cow.*, 605; *ex parte Dean & Rand* vs. *Rand,* 4 *N. H.,* 267; *Wilcox* vs. *Wood,* 9 *Wend.,* 346; *Pierpont* vs. *Graham,* 4 *Wash.,* 232; 3 *Cruise Dig.,* 323; *Woodfall's Land. & Ten.,* 190.)

2. Tuesday, the 4th day of July, 1854, was the first day of the thirteenth week of the term, and the lessee had the entire day to pay the rent for the week commencing on that day. The law in such cases recognizes no part of a day. (*Dupps* vs. *Mayo,* 1 *Saund.,* 282, 287, *and note* 16; *Smith* vs. *Sheppard,* 15 *Pick.,* 147; *Thomas* vs. *Hayden,* 19 *Verm.,* 587 [*in* 2 *U. S. Dig.,* 246, *Sec.* 23]; 3 *Cruise Dig.,* 424, *Sec.* 56; *Woodfall's Land. & Ten.,* 197.)

By the Court, MARTIN, J.

The only question presented in this case is, what was the intention of the parties to the lease in question, expressed by the stipulation that the rent should be paid weekly, in *advance.*

By the assent of counsel for both parties, that the term commenced on Tuesday, the 11th April, an assent conformable to the now well-settled doctrine regarding computation of time, we are saved much trouble in the solution of this question.

The week then commencing on Tuesday, ended on the Monday night following; were the rent payable weekly, at the end of each week, rent, if not paid during Monday, would be in arrears on Tuesday morning, so that the landlord might re-enter, or maintain his action therefor. Such is the doctrine of Donaldson *vs.* Smith (1 *Ashmead,* 197), cited by counsel for the plaintiff in error. But a different question is here presented. Admitting that the weekly term ended on Monday, when was payment to be made for the next week, within the meaning of the covenant to make the same *in advance?* As in the case of rent payable at the end

of a term or specified period, as of a quarter, the rent would not be in arrear and due until the end of such term or quarter ; so we apprehend, when it is payable at specified periods in advance, it cannot be said to be demandable until the commencement of the period covered by such rent. A covenant to pay *in advance*, is performed by payment at the time the possession is taken and the time commences, and no rule of law requires such covenant to be executed before possession taken. In such cases, possession and payment are concurrent acts; and the tenant being in possession, is entitled to the weekly interval between payments, as well as his landlord to the weekly right to demand payment. The rent then, in this case, could not have been demanded on Monday, for it was not then due, as the weekly term had not commenced ; and if Thayer could pay it at any time on Tuesday, he had the whole of that day to pay it, as the law knows no division of a day. (*See Lester* vs. *Garland*, 2 *Cow.*, 605.)

The only case we have been able to find which bears directly upon the question before us, is that of Smith *vs.* Sheppard (15 *Pick.*, 147), where it was held on a covenant to pay rent quarterly, *in advance* (the first day of the quarter falling on the first of October), that the lessee had the whole of that day in which to pay it. The principle settled by that case is, that when rent is made payable *quarterly*, or at other stated intervals, *in advance*, the tenant has the whole of the first day of each succeeding quarter, or other interval of time, in which to make the payment. This rule is founded in reason and justice, is consistent with the rules of law in analogous cases, and with the common understanding and experience of men, and operates to place such a construction upon the covenant as will preserve the rights of both parties to it. Were there any doubt respecting the meaning of the words or intention of the parties, we should arrive at the same conclusion, by observing the well-settled canon of con-

struction, that words are to be construed according to their legal sense or ordinary import, and, if this be doubtful, the intention of the parties to the contract is to govern. If this intention is doubtful, such a construction is to be adopted, if the words will admit of it, as will save an estate, rather than create a forfeiture. (1 *Pick.*, 485.)

The judgment of the Court below must be affirmed.

Present, Martin, Green, Wing, Pratt, Copeland, Johnson, Bacon, J. J.

Douglass, J., did not participate, having decided the cause in the Court below.